UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

CRISTHIAN ZUNIGA HERNANDEZ,            :
                                       :
LUIS ALFONSO PALMILLAS LOPEZ, and      :
                                       :
RAMON RODRIGUEZ MENDEZ                 :
                                       :
                                       :   Civil Action No.: 5:23-cv-00023
                                       :   CLASS ACTION
*on behalf of themselves and all those similarly*   :
*situated*,                            :
                                       :
 *Representative Plaintiffs*,          :
                                       :
v.                                     :
                                       :

MARIA LETICIA PATRICIO,

ENRIQUE DUQUE TOVAR,

JOSE CARMEN DUQUE TOVAR, and

MBR FARMS, INC., a Georgia corporation,


 *Defendants*.


## **RICO STATEMENT**
### **S.D. Ga. LR 9.1**

This statement includes the facts the Plaintiffs are relying upon to initiate this RICO

complaint as a result of the "reasonable inquiry" required by Federal Rule of Civil Procedure 11.

The information in this RICO Statement is based on information currently available to Plaintiffs.

Plaintiffs expect they will amend this RICO Statement as the case progresses.

1

**1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. § 1962(a), (b), (c) and/or (d).**

RESPONSE:

The alleged unlawful conduct is in violation of 18 U.S.C. § 1962(c) and (d).

**2. List each defendant and state the alleged misconduct and basis of liability of each defendant.**

RESPONSE:

Plaintiffs allege Defendants Maria Leticia Patricio, Enrique Duque Tovar, Jose Carmen Duque Tovar, and MBR Farms, Inc. (collectively, "Defendants") violated the RICO Act.  The alleged misconduct and basis of liability against each of the RICO Defendants is as follows:

As set forth in the Complaint, in 2020 and 2021 Defendant Enrique Duque Tovar, through four RICO Enterprises described in the Complaint and herein, submitted Job Orders to the Georgia Department of Labor ("GADOL") and to Plaintiffs Cristhian Zuniga Hernandez, Luis Alfonso Palmillas Lopez, and Ramon Rodriguez Mendez ("Plaintiffs") and other class members.  The Job Orders included an "Employer's Certification," in which Mr. Enrique Duque Tovar ("Defendant E. Duque") certified that the terms and conditions of employment in the Job Orders were accurate. The Job Orders included the following terms:

(a)  A prohibition against employers and their agents from seeking or receiving payment from any worker for application fees and recruitment costs. *See* 20 C.F.R. § 655.135(j).

(b)  In job order no. H-300-20041-312099 (the "2020 Job Order"), work to begin April 10, 2020 and continue until August 20, 2020; in job order no. H-300-21006-998169 (the "2021 Job Order"), work to begin March 8, 2021 and continue until October 10, 2021.

2

(c)   Job duties to include harvesting blueberries (2020 and 2021).

(d)   An hourly wage of not less than the adverse effect wage rate ("AEWR") of $11.71 per hour (2020); and the supposed AEWR of $11.71[1] per hour and a piece rate of $0.50 per pound of blueberries (2021).

(e)   Wages to be paid weekly.

(f)   Housing would be provided free of charge and would comply with federal, state, and local standards.

When Defendant E. Duque signed the certifications in the Job Orders, he knew some of the information he certified was false.  For example, he knew Plaintiffs and other H-2A workers would pay recruitment and application fees and costs to Defendants E. Duque and Jose Carmen Duque ("Defendant J. Duque"); Plaintiffs and other H-2A workers would work job duties not listed in the Job Order; the RICO Defendants would not pay the applicable AEWR; and the Defendants would not provide the Plaintiffs and other H-2A workers housing that met minimum standards required by law.

Further, in 2020 and 2021 Defendant E. Duque, through the RICO Enterprises, signed and submitted to the U.S. Department of Labor ("USDOL") temporary labor certification applications ("Applications for Certification"). Upon submitting the Applications for Certification, Defendant E. Duque was required to, and did, sign a declaration swearing under penalty of perjury that:

(a)   "the employer understands that it must offer, recruit at, and pay a wage that is at least the highest of the adverse effect wage rate at the time the job order is placed, the

---

[1] Defendant E. Duque's 2021 Job Order was approved even though it listed a lower AEWR for the 2021 year.

prevailing hourly or piece rate, the agreed-upon collective bargaining rate (CBA), or the Federal or State minimum wage…." Form ETA-9142A, Appendix A at ¶ B(5).

(b)    "the employer . . . [w]ill comply with applicable Federal, State and local employment-related laws and regulations. . . ." *Id.* at ¶ B(8).

(c)    "The employer and its agents have not sought or received payment of any kind from the H-2A worker for any activity related to obtaining labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs. For purposes of this paragraph, payment includes, but is not limited to, monetary payments, wage concessions (including deductions from wages, salary, or benefits), kickbacks, bribes, tributes, in kind payments, and free labor." *Id.* at ¶ B(10).

(d)    "The employer has and will contractually forbid any foreign labor contractor or recruiter whom the employer engages in international recruitment of H-2A workers to seek or receive payments from prospective employees, except as provided for in DHS regulations."

At the time Defendant E. Duque signed the sworn declarations, he knew these statements were false. He knew that MBR Farms, Inc. would not pay Plaintiffs and other class members the AEWR; that MBR Farms, Inc. would not comply with federal, state, and local statutes and regulations with respect to mandatory minimum wages, charging and reimbursing pre-employment fees and costs, housing conditions, and the requirement that H-2A workers only be employed in agriculture; that the Defendants and their agents had sought and received, or would seek and receive, payments from Plaintiffs and other class members for activities related to labor certification, and that he did not forbid foreign labor recruiters from receiving these payments; and that Plaintiffs and other class members would not work in agriculture, in violation of federal law.

4

Defendant J. Duque, through the respective RICO enterprises, recruited the Plaintiffs and other class members, made misrepresentations to the Plaintiffs and other class members during recruitment meetings regarding the terms and conditions of employment, illegally charged pre-employment fees to the Plaintiffs and other class members, and facilitated the terms and conditions of employment that resulted in the forced labor and trafficking for forced labor of the Plaintiffs and other class members.

Defendant Maria Leticia Patricio, through the respective RICO enterprises, helped orchestrate, or conspired to orchestrate, the fraudulent recruitment and forced labor scheme by assisting with the preparation of the state and federal government submissions; collecting related fees; facilitating the terms and conditions of employment that resulted in the forced labor and trafficking for forced labor of the Plaintiffs and other class members; and by knowingly benefitting financially from her participation in the venture she knew or should have known was engaged in these acts.

Defendant MBR Farms, Inc., though RICO Enterprise I, helped orchestrate, or conspired to orchestrate, the fraudulent recruitment and forced labor scheme by agreeing to be designated as a place of employment on state and federal government submissions; by facilitating the terms and conditions of employment that resulted in the forced labor, trafficking for forced labor, and servitude of the Plaintiffs and other class members; and by knowingly benefitting financially from its participation in the venture it knew or should have known was engaged in these acts.

Defendants, through the respective RICO Enterprises, used the mail and/or wires to transmit the temporary labor certification application materials between themselves, their agents, the USDOL, the GADOL, and Plaintiffs and other class members. They also used the mail and/or wires in other ways in furtherance of the scheme to provide false information to the USDOL, the

5

GADOL, and Plaintiffs and other class members.

In 2020 and 2021 the Defendants, through the RICO Enterprises, also forced Plaintiffs and other class members to work for little or no pay. Defendants E. Duque and/or J. Duque confiscated Plaintiffs' and other class members' passports, visas, and social security cards in the course of forcing Plaintiffs and other class members to work.

Specifically, the Defendants conducted or participated in and/or conspired to conduct the affairs of the RICO Enterprises by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

a.   Forced labor in violation of 18 U.S.C. § 1589;

b.   Trafficking with respect to forced labor in violation of 18 U.S.C. § 1590;

c.   Unlawful conduct with respect to documents in furtherance of trafficking, and forced labor in violation of 18 U.S.C. § 1592;

d.   Mail fraud to further their unlawful scheme in violation of 18 U.S.C. § 1341;

e.   Wire fraud to further their unlawful scheme in violation of 18 U.S.C. § 1343; and

f.   Fraud in foreign labor contracting in violation of 18 U.S.C. § 1351.

**3. List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

RESPONSE:

Not applicable.

**4. List the alleged victims and state how each victim was allegedly injured.**

RESPONSE:

As a direct and proximate result of the RICO Defendants' willful, knowing, and intentional

acts discussed above, Plaintiffs and other class members suffered injuries to their property and/or business, including but not limited to the difference between the fraudulently-promised regular wage rates and the wages Plaintiffs and other class members were paid, Plaintiffs' and other class members' recruitment and other pre-employment fees and costs, interest on loans to pay these fees and costs, and other pecuniary losses and/or losses to real or personal property.

**5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:**

**(a) List the alleged predicate acts and the specific statutes which were allegedly violated;**

RESPONSE:

The Defendants conducted or participated in and/or conspired to conduct the affairs of the RICO Enterprises by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

a.  Forced labor in violation of 18 U.S.C. § 1589;

b.  Trafficking with respect forced labor in violation of 18 U.S.C. § 1590;

c.  Unlawful conduct with respect to documents in furtherance of trafficking, and forced labor in violation of 18 U.S.C. § 1592;

d.  Mail fraud to further their unlawful scheme in violation of 18 U.S.C. § 1341;

e.  Wire fraud to further their unlawful scheme in violation of 18 U.S.C. § 1343;

f.  Fraud in foreign labor contracting in violation of 18 U.S.C. § 1351;

**(b) Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding the predicate acts;**

7

RESPONSE:

On or around March 3, 2020 (specific date in custody and control of the RICO Defendants), Defendant E. Duque, through the RICO Enterprises, signed the certification in the 2020 Job Order and the sworn declaration in the 2020 Application for Certification, both of which contained fraudulent representations.

On or around March 3, 2020 (specific date in custody and control of the RICO Defendants), Defendant E. Duque, through the RICO Enterprises, transmitted the 2020 Job Order through the mail and/or wires to the GADOL.  He also transmitted the 2020 Application for Certification to the USDOL.

In March or April 2020 (specific date in custody and control of the RICO Defendants), the GADOL approved the 2020 Job Order in reliance on Defendant E. Duque's fraudulent representations.

On March 6, 2020, the USDOL certified (approved) the 2020 Application for Certification based on Defendant E. Tovar's fraudulent representations.

In February or March 2020, individual class members paid at least $280.00 USD in pre-employment fees and costs.

In March 6, 2020, the RICO Defendants or their agent, through the RICO Enterprises, transmitted the 2020 Job Order to Plaintiffs and other class members through the mail or wires.

In March 2020: Unnamed class members accepted the job offer in the 2020 Job Order in reliance on Defendant E. Duque's fraudulent representations.

After the Plaintiffs and other class members arrived in the United States in 2020, the Defendants, through the RICO Enterprises, forced unnamed class members to work.

After the Plaintiffs and other class members arrived in the United States in 2020, Defendant

8

E. Duque and/or J. Duque confiscated class members' passports, visas, and social security cards in the course of forcing unnamed class members to work.

On or about January 14, 2021, Defendant E. Duque, through the RICO Enterprises, signed the certification in the 2021 Job Order, which contained fraudulent representations, and transmitted the 2021 Job Order to GADOL via the mail and/or wires.

In February 2021 (specific date in custody and control of the Defendants), the GADOL approved the 2021 Job Order in reliance on Defendant E. Duque's fraudulent representations.

On or about January 14, 2021, Defendant E. Duque, through the RICO Enterprises, signed the sworn declaration in the 2021 Application for Certification, which contained fraudulent representations.

On or about January 14, 2021, Defendant E. Duque transmitted the 2021 Application for Certification via the mail and/or wires to the USDOL.

On or about February 4, 2021, the USDOL certified (approved) the 2021 Application for Certification based on Defendant E. Duque's fraudulent representations.

In February 2021, Plaintiff Luis Alfonso Palmillas Lopez accepted the job offer in the 2021 Job Order in reliance on Defendant E. Duque's fraudulent representations.

From February through April 2021, Plaintiff Luis Alfonso Palmillas Lopez paid approximately USD$720 in pre-employment expenses, including recruitment fees, transportation fees, and housing fees.

In April 2021, Plaintiff Ramon Rodriguez Mendez accepted the job offer in the 2021 Job Order in reliance on Defendant E. Duque's fraudulent representations.

From February through April 2021, Plaintiff Ramon Rodriguez Mendez paid approximately USD$1,634 in pre-employment expenses, including recruitment fees,

9

transportation fees, and housing fees.

In April 2021, Plaintiff Cristhian Zuniga Hernandez accepted the job offer in the 2021 Job Order in reliance on Defendant E. Duque's fraudulent representations.

From March through April 2021, Plaintiff Cristhian Zuniga Hernandez paid approximately USD$1,600 in pre-employment expenses, including recruitment fees, transportation fees, and housing fees.

After the Plaintiffs and other class members arrived in the United States in 2021, the Defendants forced Plaintiffs and other class members to work.

After the Plaintiffs and other class members arrived in the United States in 2021, Defendants E. Duque and/or J. Duque confiscated Plaintiffs' and other class members' passports, visas, and social security cards in the course of forcing Plaintiffs and other class members to work.

**(c) If the RICO claim is based on the predicate offenses of wire fraud, mail fraud or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and content of the alleged misrepresentations and the identity of persons to whom and by whom the alleged misrepresentations were made;**

RESPONSE:

The dates, content, and individuals who made the alleged misrepresentations are set forth in Plaintiffs' response to paragraph 5(b), *supra*.

Upon information and belief, the misrepresentations in the USDOL labor certification applications were made at Defendant E. Duque's residence, at 6996 Axson Road, Axson, GA 31624, and they were transmitted to USDOL's processing center, located at the Office of Foreign Labor Certification's Chicago National Processing Center at 11 West Quincy Court, Chicago,

Illinois 60604-2105.

The misrepresentations to Plaintiffs and other class members were made in March and April 2020 and March and April 2021 in the city of Monterrey, Mexico.

The contents of the misrepresentations consisted of statements about the wages Plaintiffs and other class members would be paid and the pre-employment fees and costs, which the RICO Defendants knew to be false.

As set forth above, Defendant J. Duque, through the RICO Enterprises, made similar misrepresentations in the course of recruiting the Plaintiffs and other class members.

**(d) State whether there has been a criminal conviction for violation of the predicate acts;**

RESPONSE:

As of the date of this filing, there is no criminal conviction for the violations of the predicate acts.  Defendants Maria Leticia Patricio, E. Duque, and J. Duque, however, have been indicted and criminal proceedings are underway for the same or substantially similar conduct giving rise to the instant lawsuit.  *See United States v. Maria Leticia Patricio*, No. 5:21-CR-00009-LGW-BWC (S.D. Ga. Oct. 15, 2021), ECF No. 3.

**(e) State whether civil litigation has resulted in a judgment in regard to the predicate acts;**

RESPONSE:

Civil litigation has not resulted in any judgment in regards to the predicate acts.

**(f) Describe how the predicate acts form a "pattern of racketeering activity";**

RESPONSE:

The RICO Defendants, through the RICO Enterprises, engaged repeatedly in the fraud-

11

related racketeering activity set forth in Plaintiffs' RICO claims over the course of at least two years (in 2020 and 2021), with respect to hundreds of workers and subjected Plaintiffs and several other workers to forced labor, to live in substandard conditions, and subjugated the workers to exploitative and unlawful fees.  Further, the RICO Defendants sought new H-2A workers, who may have been subject to similar racketeering activities, for employment at their business operations in 2020 and 2021.

The RICO Defendants, through the RICO Enterprises, relied on the racketeering acts described in this Complaint to conduct their regular business activities.

The RICO Defendants' racketeering acts have or had similar purposes: to profit from the fraudulent recruitment of Plaintiffs and other H-2A workers for employment at farms and for packing pinestraw.

The RICO Defendants' acts yielded similar results and caused similar injuries to Plaintiffs, including Plaintiffs' payment of recruitment fees and expenses, and the difference between the fraudulently promised wages and the wages Plaintiffs and other class members were paid.

The racketeering acts have or had similar participants: the RICO Defendants and their agents.

The RICO Defendants, through the RICO Enterprises, directed their racketeering activities at similar individuals and entities, including Plaintiffs and other class members, and federal and state government agencies.

The RICO Defendants' acts have or had similar methods of commission, such as common recruitment tactics, relatively consistent practices with respect to collecting payments from Plaintiffs and other class members, and the use of similar employment practices and policies with respect to Plaintiffs and other class members.

12

**(g) State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.**

RESPONSE:

The alleged predicate acts related to each other as part of a common plan to profit from the fraudulent recruitment of Plaintiffs and other class members for employment at farms and for pinestraw packing, to profit from the forced labor of Plaintiffs' and other class members' work at other farms and for pinestraw packing.

**6. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

**(a) State the names of the individuals, partnerships, corporations, associations or other legal entities which allegedly constitute the enterprise;**

RESPONSE:

**RICO Enterprise I**:  Enrique Duque Tovar, Jose Carmen Duque Tovar, Maria Leticia Patricio, MBR Farms, Inc.

**RICO Enterprise II**:  Enrique Duque Tovar, Jose Carmen Duque Tovar, Maria Leticia Patricio, Daniel Mendoza, Nery Rene Carrillo-Najarro, Antonio Chavez Ramos a/k/a Tony Chavez, JC Longoria Castro, Victoriano Chavez Hernandez, Charles Michael King, Stanley Neal McGauley, Luis Alberto Martinez a/k/a Chino Martinez, Delia Ibarra Rojas, Juana Ibarra Carrillo, Donna Michelle Rojas a/k/a Donna Lucio, Margarita Rojas Cardenas a/k/a Maggie Cardenas, Juan Francisco Alvarez Campos, Rosalva Garcia Martinez a/k/a Chava Garcia, Esther Ibarra Garcia, Rodolfo Martinez Maciel, Brett Donavan Bussey, Linda Jean Facundo, Gumara Canela, Daniel Merari Canela Diaz, and Carla Yvonne Salinas.

**RICO Enterprise III**:  Seminole Hard Rock Hotel and Casino, Enrique Duque Tovar, Jose

Carmen Duque Tovar, Maria Leticia Patricio, Daniel Mendoza, Nery Rene Carrillo-Najarro, Antonio Chavez Ramos a/k/a Tony Chavez, JC Longoria Castro, Victoriano Chavez Hernandez, Charles Michael King, Stanley Neal McGauley, Luis Alberto Martinez a/k/a Chino Martinez, Delia Ibarra Rojas, Juana Ibarra Carrillo, Donna Michelle Rojas a/k/a Donna Lucio, Margarita Rojas Cardenas a/k/a Maggie Cardenas, Juan Francisco Alvarez Campos, Rosalva Garcia Martinez a/k/a Chava Garcia, Esther Ibarra Garcia, Rodolfo Martinez Maciel, Brett Donavan Bussey, Linda Jean Facundo, Gumara Canela, Daniel Merari Canela Diaz, and Carla Yvonne Salinas.

**RICO Enterprise IV**:  Officials employed at the Georgia Department of Labor, Enrique Duque Tovar, Jose Carmen Duque Tovar, Maria Leticia Patricio, Daniel Mendoza, Nery Rene Carrillo-Najarro, Antonio Chavez Ramos a/k/a Tony Chavez, JC Longoria Castro, Victoriano Chavez Hernandez, Charles Michael King, Stanley Neal McGauley, Luis Alberto Martinez a/k/a Chino Martinez, Delia Ibarra Rojas, Juana Ibarra Carrillo, Donna Michelle Rojas a/k/a Donna Lucio, Margarita Rojas Cardenas a/k/a Maggie Cardenas, Juan Francisco Alvarez Campos, Rosalva Garcia Martinez a/k/a Chava Garcia, Esther Ibarra Garcia, Rodolfo Martinez Maciel, Brett Donavan Bussey, Linda Jean Facundo, Gumara Canela, Daniel Merari Canela Diaz, and Carla Yvonne Salinas.

**(b) Describe the structure, purpose, function and course of conduct of the enterprise;**

RESPONSE:

The aforementioned RICO Enterprises had a common purpose to fraudulently misrepresent the terms and conditions of the employment to foreign workers and to charge various unlawful recruitment fees and other expenses to Plaintiffs and other class members.

**(c) State whether any defendant is an employee, officer or director of the**

14

**alleged enterprise;**

RESPONSE:  No Defendant is an employee, officer, or director of any of the alleged enterprises.

**(d) State whether any defendant is associated with the alleged enterprise;**

RESPONSE:

Each Defendant is associated with one or more of the RICO Enterprises as set forth above.

**(e) State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise or that the defendants are the enterprise itself, or members of the enterprise; and**

RESPONSE:

The Defendants are individuals and one entity separate from the alleged RICO enterprises and are members of one of more of the RICO Enterprises, as set forth above.

**(f) If any defendant is alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments or victims of the alleged racketeering activity.**

RESPONSE:

As members of the respective RICO Enterprises, the Defendants are perpetrators, through the RICO Enterprises, of the alleged racketeering activity.

**7. State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

RESPONSE:

The pattern of racketeering activity and the RICO Enterprises are separate. The RICO Enterprises existed independently from the racketeering activity as ongoing associations of fact.

VP/#60763384.3

The RICO Defendants were associated with the respective enterprises, as set forth above, and conducted or participated in the affairs of the respective enterprises through a pattern of racketeering activity. The enterprises had the common purpose to recruit, contract, transport, and employ foreign workers to work in agriculture and in packing pinestraw while purposefully ignoring the applicable rules and regulations regarding the employment of Plaintiffs and other class members in order for the RICO Defendants to earn unlawful profits from Plaintiffs and other class members.

**8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how, if at all, the racketeering activity differs from the usual and daily activities of the enterprise.**

RESPONSE:

As set forth above, the usual and daily activities of the RICO Enterprise consist of recruiting, contracting, transporting, and employing foreign workers to work in agriculture and in packing pinestraw while charging the foreign workers unlawful fees and paying them unlawful wages. The RICO Defendants participated in and conducted the affairs of the RICO Enterprises through a pattern of defrauding the USDOL, the GADOL, and Plaintiffs and other class members, and forcing Plaintiffs and other class members to work both in agricultural and non-agricultural employment.

**9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

RESPONSE:

The alleged pattern of racketeering activity advanced the purpose and goal of the RICO Enterprise to recruit, contract, transport, and employ foreign workers to work in agriculture and in

16

packing pinestraw while purposefully ignoring rules and regulations as to the employment of H-2A workers so to allow the RICO enterprises to extract various unlawful fees from the workers.  By paying less than the wages communicated to USDOL, GADOL, and Plaintiffs and other class members and therefore reducing their overhead, the Defendants, as the operators and/or managers of the RICO Enterprises, benefitted from conducting and participating in the RICO Enterprises' affairs through the pattern of racketeering activity.  The Defendants increased their profits far above what those profits would have been absent the mail fraud, wire fraud, and fraud in foreign labor contracting predicate acts.  Further, by forcing Plaintiffs and other class members to work for sub-minimum wages, the Defendants, through the respective Enterprises, excised themselves from the free market of labor, which otherwise would have required the Defendants to compete with other employers for workers and offer higher wages and better working conditions to attract employees.  As such, the Defendants increased their profits by using the respective RICO Enterprises to subject Plaintiffs and other class members to forced labor.

**10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

RESPONSE:

The Defendants, through the RICO Enterprises, recruited Plaintiffs and other class members in Mexico and transported them across international and state boundaries for the purpose of employing them in Georgia.  Plaintiffs and class members handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.  Further, by using the mail and wires in furtherance of the fraudulent acts, the enterprise has an inherent nexus with interstate commerce. Funds acquired through the racketeering activities were laundered across state lines, such as through the Seminole Hard Rock Hotel and Casino in Florida.

17

**11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

      **(a) State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**

RESPONSE:

This sub-part does not apply to Plaintiffs' claims.

      **(b) Describe the use or investment of such income.**

RESPONSE:

This sub-part does not apply to Plaintiffs' claims.

**12. If the complaint alleges a violation of 28 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

RESPONSE:

This sub-part does not apply to Plaintiffs' claims.

**13. If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:**

      **(a) State who is employed by or associated with the enterprise; and**

RESPONSE:

Defendants Enrique Duque Tovar, Jose Carmen Duque Tovar, Maria Leticia Patricio, and MBR Farms, Inc. are associated with the RICO Enterprises.

      **(b) State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

RESPONSE:

The Defendants are not both the liable "persons" and the "enterprise" under § 1962(c).

**14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

RESPONSE:

Plaintiffs allege violation of 18 U.S.C. § 1962(d) in the alternative as to Defendant MBR Farms, Inc.'s and Defendant Maria Leticia Patricio's direct participation, through the RICO Enterprises, in predicate acts. To the extent these Defendants were not direct perpetrators, they conspired with Defendants E. Duque and J. Duque by knowingly providing support to the violations of his sworn declarations to USDOL in the 2020 and 2021 Applications for Certification and representations to GADOL and to Plaintiffs and other class members in the 2020 and 2021 Job Orders.

**15. Describe the alleged injury to business or property.**

RESPONSE:

Plaintiffs and other class members suffered injury to business or property by being deprived of the funds they expended for pre-employment and other unlawful fees and costs and by being deprived of the promised wages.

**16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

RESPONSE:

Plaintiffs suffered damages by reason of the Defendants' violations of the RICO statute. The RICO Defendants, through the RICO Enterprises, knowingly provided false information to the USDOL and GADOL regarding the wages they would pay Plaintiffs and other class members. The USDOL and GADOL relied upon these fraudulent communications when they granted labor certification to and approved the Job Order for Defendant E. Duque. The direct result of the RICO

19

Defendants' fraud was the Plaintiffs' and other class members' unpaid promised wages and the Plaintiffs' and other class members' pre-employment fees and costs, as well as the interest Plaintiffs and other class members paid on loans to cover those fees and costs.

Further, the Defendants, through the RICO Enterprises, promised wages directly to Plaintiffs and other class members which the RICO Defendants knew to be false. Plaintiffs and other class members relied upon these misrepresentations when they accepted the job opportunities and paid the pre-employment fees and costs, as well as interest on those fees and costs. Plaintiffs and other class members also earned depressed wages as a direct consequence of the Defendants' fraud conducted through the RICO enterprise.

**17. List the damages sustained for which each defendant is allegedly liable.**

RESPONSE:

The Defendants are liable for the difference between the fraudulently promised regular and overtime wage rates and the wages Plaintiffs and other class members were paid, the pre-employment fees and costs Plaintiffs and other class members paid in reliance upon the Defendants' misrepresentations about the Plaintiffs' and other class members' wages, interest on loans Plaintiffs and other class members had to take out to pay those fees and costs, and other pecuniary losses and/or losses to real or personal property up to the point at which each Plaintiffs' and other class members' employment with Defendants was terminated.

**18. List all other federal causes of action, if any, and provide the relevant statute numbers.**

RESPONSE:

- Minimum wage and overtime violations, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207.

20

- Forced Labor, Trafficking with Respect to Forced Labor, Conspiracy to Commit Forced Labor and Trafficking with Respect to Forced Labor, Unlawful Conduct with Respect to Documents, and benefitting financially from these acts, pursuant to the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. §§ 1589, 1590, 1592, 1594, and 1595.

**19. List all pendent state claims, if any.**

RESPONSE:

- Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-1 *et seq.*

- Unjust enrichment

- Intentional Infliction of Emotional Distress

**20. Provide any additional information that you feel would be helpful to the Court in processing your RICO claim.**

RESPONSE:

Plaintiffs do not believe there is additional information not already provided in this statement and in the Complaint that would be helpful to the Court in considering the Plaintiffs' RICO claims.

21

Dated: April 24, 2023.

Respectfully Submitted,

CRISTHIAN ZUNIGA HERNANDEZ,
LUIS ALFONSO PALMILLAS LOPEZ,
and RAMON RODRIGUEZ MENDEZ

/s/ Charlie Y. Wang
Charlie Y. Wang
(California Bar No. 320236)
(Admitted *Pro Hac Vice*)
VEDDER PRICE (CA), LLP
1925 Century Park East, Suite 1900
Los Angeles, California 90067
Tel: (424) 204-7700
E-mail: cwang@vedderprice.com

Daniel Werner (Ga. Bar No. 422070)
RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
Tel: (678) 271-0304
E-mail: dan@decaturlegal.com

NOTICE COUNSEL:

Anand Ramana (D.C. Bar No. 489478)
(*Pro Hac Vice* Application Forthcoming)
VEDDER PRICE P.C.
1401 New York Ave N.W.
Suite 500
Washington, D.C. 20005
Tel: (202) 312-3325
E-mail: aramana@vedderprice.com

22

Dana Mehlman (Illinois Bar No.  6302515)
(Admitted *Pro Hac Vice*)
Allison Czerniak (Illinois Bar No.  6319273)
(*Pro Hac Vice* Application Forthcoming)
VEDDER PRICE P.C.
222 North LaSalle Street,
Chicago, Illinois 60601
Tel: (312) 609-7509
Tel: (312) 609-7626
E-mail: dmehlman@vedderprice.com
E-mail: aczerniak@vedderprice.com

VP/#60763384.3