IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| CRISTHIAN ZUNIGA HERNANDEZ, <br><br> LUIS ALFONSO PALMILLAS LOPEZ, and <br><br> RAMON RODRIGUEZ MENDEZ, <br><br>    Plaintiffs, <br> v. <br><br> MARIA LETICIA PATRICIO, et al. <br><br>    Defendants. | Civil No. 5:23-CV-00023 |

### MOTION TO STAY AND FOR EXTENSION OF DISCOVERY DEADLINES

Plaintiffs Christhian Zuniga Hernandez, Luis Alfonso Palmillas Lopez, and Ramon Rodrigues Mendez file this Motion for the following relief:

1. A stay of this case pursuant to 18 U.S.C. § 1595(b); and

2. An extension of the written discovery and fact deposition deadlines until 90 days after Defendant Jose Carmen Duque Tovar files his Answer, with post-discovery deadlines extended commensurate with the amount of time allotted in the Court's December 13, 2023 Scheduling Order. R. Doc. 45.

In support of this Motion, Plaintiffs incorporate by reference the following Memorandum of Law.

### MEMORANDUM OF LAW

**I.      INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiffs filed this lawsuit on April 5, 2023 alleging Defendants violated the following provisions of the Trafficking Victims Protection Act ("TVPA"): forced labor, 18 U.S.C. § 1589; trafficking with respect to forced labor, 18 U.S.C. § 1590; unlawful conduct with respect to

documents in furtherance of forced labor and trafficking for forced labor, 18 U.S.C. § 1592; and benefitting financially from the foregoing TVPA violations, 18 U.S.C. § 1595(a). Rec. Doc. 1 ("Complaint") at ¶¶ 194-205, 217-225. Further, in the alternative to the forced labor and trafficking for forced labor claims against Defendants Maria Leticia Patricio ("Patricio") and MBR Farms, Inc. ("MBR") (collectively, "the Conspiracy Defendants"), Plaintiffs alleged the Conspiracy Defendants conspired to commit forced labor and trafficking for forced labor, 18 U.S.C. § 1594. *Id.* at ¶¶ 208-216.

In addition to the TVPA claims, Plaintiffs alleged Defendants violated the minimum wage and overtime provisions of the Fair Labor Standards Act, 18 U.S.C. §§ 207 & 207; the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; the Georgia RICO, O.C.G.A. § 16-14-1, *et seq.*; and state claims for unjust enrichment and intentional infliction of emotional distress. Complaint at ¶¶ 226-306.

The Defendants in this lawsuit, with the exception of MBR, were indicted on, *inter alia*, similar TVPA charges in the matter of *United States v. Patricio*, No. 5:21-cr-00009-LGW-BWC (S.D. Ga.) ("Criminal Case"), R. Doc. 3, July 30, 2024 Decl. of Daniel Werner ("Werner Decl.") at ¶ 3, Ex. A ("Indictment"). The government has since issued a superseding indictment against several criminal defendants, including Enrique Duque Tovar and Jose Carmen Duque Tovar, who are Defendants in this civil action. Criminal Case R. Doc. 1012 (June 4, 2024), Werner Decl. at ¶ 3, Ex. B ("Superseding Indictment"). Defendant Patricio entered a plea agreement in the criminal case on June 7, 2024. Criminal Case R. Doc. 1030, Werner Decl. at ¶ 3, Ex. C.

This is one of three currently separate lawsuits arising out of the same or similar claims as the Criminal Case. *See Marin-Santiago v. Canela*, No. 5:21-cv-00061-LGW-BWC (S.D. Ga., Oct. 18, 2021); *Aguilar-Roblero v. Carrillo-Najarro*, No. 5:23-cv-00010-LGW-BWC (S.D. Ga., Feb.

10, 2023). *Marin-Santiago* and *Aguilar-Roblero* both are stayed pursuant to the automatic stay provision of 18 U.S.C. § 1595(b), *Marin-Santiago* R. Doc. 40; *Aguilar-Roblero* R. Doc. 37.

Defendant MBR waived service, R. Doc. 13, and filed its answer on June 30, 2023. R. Doc. 16. Plaintiffs served Defendant Enrique Duque Tovar ("Enrique Duque") on July 6, 2023, R. Doc. 21, and he timely filed his answer (after the court granted a consent motion for an extension) on August 4, 2023. R. Doc. 28.

Until recently, Defendant Jose Carman Duque Tovar ("Jose Duque") had been a fugitive in the Criminal Case. Plaintiffs understood he had fled to Mexico, and Plaintiffs had not been able to serve him with the summons and complaint. On October 10, 2023, Plaintiffs filed a Motion for Alternative Service. R. Doc. 32. The Court denied Plaintiffs' motion. R. Doc. 44. On July 10, 2024, Jose Duque entered an appearance bond in the Criminal Case. Criminal Case R. Doc. 1078, Werner Decl. at ¶ 3, Ex. D. Therefore, it appearing Jose Duque has now returned to the United States, Plaintiffs are again attempting personal service on him. Plaintiffs' process server has attempted personal service and has been dispatched to make a second attempt. Plaintiffs' counsel also has requested that Jose Duque's criminal defense counsel accept service. He declined, but Plaintiffs will file a Renewed Motion for Alternative Service through Jose Duque's criminal defense counsel if the second personal service attempt fails. *See Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182 (S.D. Fla. 2012) (collecting cases; alternative service on counsel is permissible in light of the regularity of contact between the defendant and his attorney). Werner Decl. at 4-8.

The Clerk of the Court entered a default against Defendant Patricio in this action on October 18, 2023, R. Doc. 35, and the Court subsequently denied Ms. Patricio's motion to set aside the default. R. Doc. 43.

On March 29, 2025, Plaintiffs filed a Motion for Conditional Certification and Court-Facilitated Notice of a FLSA collective action. R. Doc. 49. No Defendant filed an opposition to the Motion, and it is currently pending before the Court.

Plaintiffs have been diligently pursuing discovery in this case. However, because of the government's seizure of three of the four Defendants' documents and electronic devices, and because of a related protective order in the Criminal Case, Plaintiffs have not been able to obtain essential documents from Enrique Duque. Werner Decl. at ¶ 3, Ex. F, and ¶ 9. Finally, because Defendant Jose Duque only recently returned from Mexico[1] and surfaced in the Criminal Case, Plaintiffs are only now attempting to serve him with the Summons and Complaint and will not be able to take discovery from him until issue is joined.

On July 15, 2024, more than a month before the current close of discovery, Defendant MBR filed a Motion to Dismiss, and in the Alternative, Motion for Summary Judgment ("Summary Judgment Motion"). R. Doc. 61. MBR included a previously undisclosed declaration from Enrique Duque—signed two weeks before MBR filed its Summary Judgment Motion—as its sole evidentiary support. R. Doc. 61 at ECF p. 33 ("E. Duque Decl.").[2] Among other things, Enrique Duque refers to an "agreement" with MBR to provide workers to harvest MBR's blueberries, E. Duque Decl. at ¶ 9; his engagement of his brother, Defendant Jose Duque (who until recently had been a fugitive), to identify and recruit H-2A workers for employment at MBR, *Id.* at ¶ 4; and his engagement of Defendant Patricio to assist with the H-2A visa application process. *Id.* at ¶ 6. However, none of the documents reflecting these agreements and engagements

---

[1] The 90-day limit for service does not apply to service in a foreign country. *See* Fed. R. Civ. P. 4(m).
[2] MBR filed its Summary Judgment Motion, supporting brief, Statement of Undisputed Material Facts, and Enrique Duque's declaration as a single CM-ECF document. *Id.*

have been produced because of the Criminal Case and related protective order. Further, Enrique Duque makes various conclusory and contradictory statements regarding the degree of control MBR had over the workers.

In light of Enrique Duque's declaration, Plaintiffs have scheduled his deposition for August 5, 2024. However, Enrique Duque's criminal defense counsel will participate in the deposition and will "advise Mr. Duque regarding his 5th amendment rights as well as when the protective order in effect in his criminal case would preclude certain testimony." Jimmy Miller Email (July 29, 2024), Werner Decl. at ¶ 3, Ex. E. Plaintiffs will take the position the Enrique Duque waived his Fifth Amendment privilege when he submitted the sworn declaration in support of MBR's Summary Judgment Motion. However, Plaintiffs expect this will be the subject of motion practice, and the Criminal Case protective order will prevent Enrique Duque from testifying regarding most documents at issue in his declaration.

## II.     ARGUMENT

### A.     Request for a Stay

#### 1.     Stays Under Section 1595(b)(1) Are Mandatory.

The language of the TVPA is clear and mandatory: "Any civil action brought under [the TVPA] *shall* be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is a victim." 18 U.S.C. § 1595(b)(1) (emphasis added). Congress enacted this stay provision "to alleviate the U.S. Department of Justice's concern that civil suits could hinder a domestic prosecutor's ability to try criminal cases 'unfettered by the complications of civil discovery.'" *Plaintiff A v. Schair*, 744 F.3d 1247, 1254 (11th Cir. 2014) (emphasis omitted) (quoting H.R. Rep. No. 108–264(II), at 17 (2003)).

Because § 1595(b)(1) provides that civil proceedings "*shall* be stayed," there is no discretion when the statute's conditions are met. *See Lunkes v. Yannai*, 882 F. Supp. 2d 545, 549, 550 (S.D.N.Y. 2012) (describing § 1595(b)(1) as a "*mandatory* stay provision" and noting "the ordinary meaning of Section 1595's *command*" for a stay (emphasis added)); *Muchira v. Al-Rawaf*, 850 F.3d 605, 616 (4th Cir. 2017) (§ 1595(b) is "the TVPA's mandatory stay provision"); *Schair*, 744 F.3d at 1254 (same); *see also, e.g.*, *Lopez v. Davis*, 531 U.S. 230, 241 (2001) (contrasting "Congress' use of a mandatory 'shall' . . . to impose[s] discretionless obligations" with Congress' "use of the permissive 'may'").

        2.     **The Ongoing Criminal Prosecution Constitutes "Criminal Action" Requiring a Stay under the TVPA.**

Three of the four Defendants in this lawsuit are under criminal indictment. The statute is clear that an active criminal investigation is sufficient to trigger the stay requirement: a "criminal action includes *investigation and prosecution* and is pending until final adjudication in the trial court." *Id.* § 1595(b)(2) (emphasis added). Here, the U.S. Attorney's Office and other federal investigative agencies are actively prosecuting Defendants Patricio, Enrique Duque, and Jose Duque. Under those circumstances, there is an ongoing "criminal action" that triggers the TVPA's mandatory stay provision. *See, e.g.*, *Ara v. Khan*, 2007 WL 1726456, at *1 (E.D.N.Y. June 14, 2007) (stay was proper where government reportedly "initiated a criminal investigation into the circumstances and conditions under which the plaintiff was employed by the defendants").

        3.     **The Criminal Prosecution Arises Out of the Same Occurrence As the Civil Action.**

The Complaint alleges that the Defendants recruited (or conspired to do so) the Plaintiffs in Mexico, charged them illegal fees and costs, transported them from Mexico to south Georgia to work for the Defendants, forced the Plaintiffs to live and work for subminimum wages under

6

deplorable conditions, seized the workers' passports and visas to prevent them from leaving, threatened deportation when the workers complained, and threatened and used violence against workers who complained. *See* Compl. ¶¶ 155-183. Plaintiffs allege these actions violated the forced labor, trafficking for forced labor, document servitude, and venture liability provisions of the TVPA.[3] The Complaint specifically alleges Defendants Patricio, Enrique Duque, and Jose Duque "were indicted on multiple federal charges arising out of the same scheme that gave rise to this lawsuit." Compl. at ¶ 33 (the indictment was attached to the Complaint as Exhibit 2). Enrique Duque admits the fact of the indictment in his Answer. R. Doc. 28 at ¶ 33.

The indictment similarly alleges, *inter alia*, Defendants Patricio, Enrique Duque, and Jose Duque "were members and associates of a translational criminal organization … whose members and associates engaged in … international forced labor trafficking…." Indictment at ¶ 1, Superseding Indictment at ¶ 1[4]; Defendant Enrique Duque "unlawfully held the foreign workers' identification documents to prevent them from leaving and threatened the workers with violence[,]" Indictment at ¶ 20, Superseding Indictment at ¶ 15; Defendant Jose Duque "unlawfully held the foreign workers' identification documents to prevent them from leaving[,]" Indictment at ¶ 21, Superseding Indictment at 16; and,

> In or around April 2021 and May 2021, Defendant Enrique Duque Tovar, Defendant Jose Carmen Duque Tovar, aided and abetted by Defendant Maria Leticia Patricio, and others, unlawfully charged Victims 42, 43, 44, 45, 46, 47, 48, 49, and 50 fees they could not afford, confiscated their identification documents to prevent them from leaving, put them to work in the fields harvesting crops, forced them to live in cramped, single room trailers with little or no food and limited plumbing, forced them to sleep in the same cramped trailer with a worker contagious with measles, and threatened them with violence and deportation.

---

[3] In the alternative, Plaintiffs allege the Conspiracy Defendants conspired to commit forced labor. Compl. at ¶¶ 208-216.
[4] Defendant Patricio is not charged in the Superseding Indictment. Ms. Patricio entered a guilty plea on June 6, 2024 and is awaiting sentencing. Criminal Case R. Doc. 1030.

7

Indictment at ¶¶ 63(ff), Superseding Indictment at ¶ 47(ff). The Indictment specifically charges Defendants Enrique Duque and Jose Duque of nine counts of forced labor, in violation of 18 U.S.C. § 1589, Indictment at ¶ 72, Counts 30-38, Superseding Indictment at ¶ 56, Counts 24-32; and Defendant Patricio, Enrique Duque, and Jose Duque of Conspiracy to Engage in Forced Labor, in violation of 18 U.S.C. § 1594(b), Indictment at ¶¶ 68-70, Superseding Indictment at ¶¶ 52-54.[5]

In other words, the criminal prosecution "aris[es] out of the same occurrence[s]" as those which are the basis of this civil action. *See* 18 U.S.C. § 1595(b)(1). That showing clearly satisfies the TVPA's standard. *See Ara*, 2007 WL 1726456, at *1 (granting stay because both civil TVPA suit and criminal forced-labor and trafficking investigation involved "circumstances and conditions under which the plaintiff was employed by the defendants"); *cf. Tianming Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, 2020 WL 5983939, at *4 (D. N. Mar. I. Oct. 9, 2020) (denying stay because criminal charges were based on "defendants defrauding and deceiving the U.S. government and its agencies," while civil complaint was based on "trafficking, worker exploitation, forced labor, and egregious working conditions.").

Further, a stay would put this case on equal footing and on a similar timeline to the two related civil lawsuits—both of which are stayed—arising out of the same criminal scheme. *Marin-Santiago* R. Doc. 40; *Aguilar-Roblero* R. Doc. 37. Once the stays are lifted in the case at bar (if the Court grants this motion) and the two related cases, Plaintiffs intend to seek consolidation of the three cases, which would promote the overall efficiency of the proceedings.

---

[5] *See supra* note 3.

4.  **All Civil Causes of Action Against All Defendants Must Be Stayed.**

Section 1595(b) requires that the Court stay the entire civil action, not just those claims arising under the TVPA.[6] Specifically, the statute requires staying "any civil action," not just specific claims, when its conditions are met. 18 U.S.C. § 1595(b)(1). That result, of course, is consistent with the goal of the TVPA's stay provision to prevent the "complications" of civil discovery from hindering criminal investigations, and to ensure that "prosecutions . . . take priority over civil redress." *Lunkes*, 882 F. Supp. 2d at 549 (quoting H.R.Rep. No. 108–264, pt. 2, at 17 (2003)). Based on this plain text and purpose, as long as a TVPA claim arises "out of the same occurrence in which the claimant is the victim," the TVPA requires staying the case as to all claims and all defendants. 18 U.S.C. § 1595(b)(2). There can simply be no doubt that such is the case in the instant civil action.

The court in *Lunkes*, which stayed the entire civil case where only three (3) out of the 13 total claims arose under the TVPA, agreed with that logic. 882 F. Supp. 2d at 551. As the court explained, § 1595 expressly "requires the stay of '[a]ny civil action' to which it is applicable; it does not speak of staying particular claims." *Id.* at 550. The court also recognized that partial stays would not fulfill the purpose of the stay provision: "staying only the plaintiffs' TVPRA claims would not avoid the risk of civil litigation interfering with the government's ability to prosecute its case because, as with additional defendants, discovery with respect to a plaintiff's non-TVPRA claims will commonly overlap with the TVPRA-specific discovery." *Id.*; *see also*, *e.g.*, *Ara,* 2007 WL 1726456, at *1–2 (staying "all proceedings" under § 1595(b)(1) in case raising several non-TVPA claims, including wage-and-labor violations).

---

[6] All claims in the Complaint revolve around the same core issue—whether Plaintiffs and putative class and collective members are entitled to unpaid wages and other damages.

9

It is also irrelevant if some number of defendants are outside the ambit of the government's investigation. "[A] Section 1595 stay . . . encompass[es] all defendants in a case," even those "not facing criminal charges," *Lunkes,* 882 F. Supp. 2d at 550, because section 1595 commands that its stays apply to "civil action[s]," not to particular claims or particular parties. 18 U.S.C. § 1595(b)(1). As *Lunkes* explains, a stay is required because the civil action "with respect to those civil defendants not facing criminal charges" would "overlap significantly" with the government's investigation or prosecution of the remaining civil defendants. 882 F. Supp. 2d at 550. "Thus, the risk of interference with criminal prosecution is fully addressed only by extending the stay to all defendants." *Id.*

Finally, as noted above, Plaintiffs' ability to obtain substantive discovery from Defendant Enrique Duque has been hampered by the protective order in place in the Criminal Case, and Defendant Jose Duque has yet to be served, issue has not been joined as to him, and therefore discovery has not begun related to Plaintiffs' claims against him. Defendant MBR's Summary Judgment Motion centers on MBR's self-serving position that it had no involvement with the workers employed on its farm. MBR relies entirely on Defendant Enrique Duque's declaration, which refers to agreements between him, MBR, Defendant Patricio, and Defendant Jose Duque, though Enrique Duque has yet to produce any of the agreements; presumably because they are subject to the Criminal Case protective order. Further, as noted above, though we are scheduled to depose Enrique Duque shortly, he intends to invoke his Fifth Amendment privilege and decline to answer questions because of the Criminal Case protective order. Therefore, Plaintiffs are in the untenable position of attempting to oppose MBR's Summary Judgment Motion without documents or testimony regarding the one document MBR submitted as evidentiary support for the motion.

        5.        **The Court May Permit Exceptions to the Stay to Manage Its Docket and to Protect the Parties' Interests.**

While the TVPA requires the Court to stay the civil proceedings, the Court retains some "inherent authority to manage [its] dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016). The Court's exercise of that authority must be "a reasonable response to the problems and needs confronting the court's fair administration of justice" and not "contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Id.* (quotation marks and citations omitted). Accordingly, notwithstanding the entry of a stay, the parties should be permitted to seek the intervention of the Court if necessary for emergency situations related to this matter, Plaintiffs should be permitted to seek the intervention of the Court if needed to effectuate service on Jose Duque, and—if the Court grants Plaintiffs' motion for conditional certification of the FLSA collective action—Plaintiffs should be permitted to distribute notice to prospective members of the collective so their claims are not time-barred. *See* 29 U.S.C. § 255(a)(two year statute of limitations for FLSA claims; three years for willful FLSA violations); 29 U.S.C. § 256(b)(written consent to sue must be filed to toll the FLSA statute of limitations); *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 171-72 (1989)(same). The Court retains discretion to respond to such applications as appropriate, consistent with its inherent authority. *Dietz,* 579 U.S. at 45.

    **B.**    **Request to Extend Discovery Deadlines.**

The Court's Scheduling Order provides that the deadlines in this case "will not be extended except upon a showing of good cause." R. Doc. 45 (citing Fed. R. Civ. P. 16(b)(4). Plaintiffs show good cause as follows:

    1.    As discussed above, Defendant Jose Duque, who until recently was a fugitive, has yet to be served with the Summons and Complaint in this action. The current discovery cut-off in

this case is August 14, 2024. R. Doc. 45. As set forth above, Plaintiffs have been attempting to serve Jose Duque since they learned of his appearance in the Criminal case. *Supra* at p. 3. However, even if Plaintiffs were to serve Jose Duque in the coming days, Plaintiffs would not be able to take discovery from him until after the current close of discovery.

2. Plaintiffs have not been able to obtain substantive discovery responses (other than tax returns) from Defendant Enrique Duque because of the protective order in place in the Criminal Case. Plaintiffs expect the protective order will be lifted at the conclusion of the Criminal Case or, if not, Plaintiffs would seek at that juncture entry of a protective order in this case that would allow production of the documents from the Criminal Case while maintaining the confidentiality of those documents.

3. With respect to discovery directed to Defendant Enrique Duque, he provided his initial responses to Plaintiffs' discovery demands on April 26, 2024. With respect to nearly every request, he indicated the responsive documents had been confiscated as part of the Criminal Case, "and those records are subject to a protective order which prevents them from being used by Defendant, shown to or shared with Defendant's counsel in this case, or otherwise made available in this civil action." Werner Decl. at ¶ 3, Ex. F, and ¶ 9. Counsel for the Plaintiffs and Enrique Duque met and conferred on June 6, 2024, after which Enrique Duque supplemented his responses on June 7, 2024, but continued to claim he could not provide responsive documents because of the Criminal Case protective order (Plaintiffs do not dispute that the terms of the Criminal Case protective order would prevent disclosure of the documents in the civil case). *Id.*

4. For these reasons,[7] Plaintiffs respectfully request that that discovery deadlines be extended until 90 days after Defendant Jose Carmen Duque Tovar files his Answer.

5. Post-discovery case deadlines would then be extended commensurate with the amount of time allotted in the Court's December 13, 2023 Scheduling Order. R. Doc. 45.

6. Defendants have indicated they do not consent to Plaintiffs' request to extend the case deadlines as presented.

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that the Court (a) stay this civil action until the conclusion of the related Criminal Case, and (b) extend the written discovery and fact witness deposition deadlines until 90 days after Defendant Jose Carmen Duque Tovar files his Answer, with post-discovery deadlines extended commensurate with the amount of time allotted in the Court's December 13, 2023 Scheduling Order.

Respectfully submitted this day: July 30, 2024.

/s/ Daniel Werner
Daniel Werner (GA Bar No. 422070)
RADFORD SCOTT, LLP
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
Tel: (678) 271-0304
E-mail: dwerner@radfordscott.com

---

[7] Lead counsel for Plaintiffs, Daniel Werner, was hospitalized for five days with COVID-related pneumonia and a collapsed lung in early July and has been slowly recovering since then. He had intended to file this motion several weeks ago but was not able to do so because of the severity of his COVID symptoms. While Plaintiffs are not claiming this as a basis for the requested extension, they provide this information to explain the delay seeking the extension.

13

BY: /s/ Charlie Y. Wang
Charlie Y. Wang
(California Bar No. 320236)
(*Pro Hac Vice*)
VEDDER PRICE (CA), LLP
1925 Century Park East, Suite 1900
Los Angeles, California 90067
Tel: (424) 204-7700
E-mail: cwang@vedderprice.com

**NOTICE COUNSEL:**
Anand Ramana (D.C. Bar No. 489478)
(*Pro Hac Vice* Application Forthcoming)
VEDDER PRICE P.C.
1401 New York Ave N.W.
Suite 500
Washington, D.C. 20005
Tel: (202) 312-3325
E-mail: aramana@vedderprice.com

Dana Mehlman (Illinois Bar No. 6302515)
(*Pro Hac Vice*)
Allison Czerniak (Illinois Bar No. 6319273)
(*Pro Hac Vice* Application Forthcoming)
VEDDER PRICE P.C.
222 North LaSalle Street,
Chicago, Illinois 60601
Tel: (312) 609-7509
Tel: (312) 609-7626
E-mail: dmehlman@vedderprice.com
E-mail: aczerniak@vedderprice.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record. Further, I caused to be mailed by United States Mail, postage prepaid, the foregoing document to Defendant Maria Leticia Patricio at the following address:

Maria Leticia Patricio
208 Nopalito Rd
Nicholls, GA 31554

                                                 /s/ Daniel Werner
                                                 Daniel Werner