IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| CRISTHIAN ZUNIGA HERNANDEZ, LUIS ALFONSO PALMILLAS LOPEZ, and RAMON RODRIGUEZ MENDEZ,<br><br>*on behalf of themselves and all those similarly situated*,<br><br>   Plaintiffs,<br><br>v.<br><br>MARIA LETICIA PATRICIO, ENRIQUE DUQUE TOVAR, JOSE CARMEN DUQUE TOVAR, and MBR FARMS, INC., a Georgia corporation,<br><br>   Defendants. | Civil No. CV 523-023<br><br>**ACCIÓN DE CLASE Y COLECTIVA** |

## DECLARACIÓN

Yo, <u>Cristhian Zúñiga Hernández</u>, declaro lo siguiente basado en mi conocimiento personal:

1. Soy un Demandante en este caso contra los Demandados María Leticia Patricio, Enrique Duque Tovar, José Carmen Duque Tovar y MBR Farms, Inc. (colectivamente, "Demandados").

2. Trabajé para los Demandados en 2021. Presento esta declaración sobre ese período de tiempo en apoyo de mi Oposición a la Moción de Desestimación del Demandado MBR Farms, Inc. y, como Alternativa, la Moción de Juicio Sumario.

3. Mi residencia permanente está en México.

4. Aunque conozco algunas palabras en inglés, no hablo ni entiendo inglés. El único idioma que hablo y entiendo es el español.

5. Soy un trabajador manual. A menudo tengo que viajar para buscar oportunidades de trabajo.

6. En 2021, viajé a los Estados Unidos desde México con una visa H-2A para trabajar para los Demandados. Había otros trabajadores H-2A que también vinieron de México para trabajar para los Demandados cuando yo trabajaba allí.

7. Cuando los Demandados solicitaron traerme a los Estados Unidos como trabajador H-2A, los Demandados le dijeron al gobierno que realizaría trabajos agrícolas relacionados con los arándanos y que trabajaría 35 horas a la semana. Los acusados prometieron que ganaría $11.71 por hora y $0.50 por libra de tarifa por pieza, pero me pagaron menos que esas tarifas.

8. Los Demandados José Carmen Duque Tovar ("José") y Enrique Duque Tovar ("Enrique") me cobraron honorarios por el transporte, la obtención de la visa y los honorarios de reclutamiento.

9. Sin embargo, cuando llegué por primera vez a Georgia, los Demandados no me indicaron inicialmente que trabajara en las granjas de arándanos. En cambio, me dijeron que hiciera fardos de pino, recogiera la basura y limpiara. Los demás obreros de H-2A realizaban tareas similares. Más tarde me transportaron a una granja de arándanos en Pearson, Georgia, para cultivar arándanos. Mis funciones alternaban entre el empaque de pinos y el trabajo en la granja de arándanos.

10. Ocasionalmente trabajaba más de 40 horas a la semana, pero no me pagaban horas de sobretiempo.

11.     Mientras trabajaba en la granja de arándanos, mis deberes incluían cultivar arándanos a mano o usar una máquina cosechadora, eliminar escombros y basura de los campos de arándanos, cargar y descargar cajas llenas de arándanos en camiones y paletas, y arrancar hierbas malas.

12.     Casi todos los días que trabajaba en el campo de arándanos, Enrique nos decía que los dueños querían que hiciéramos tareas específicas, como cortar los arándanos maduros de una manera específica, recoger secciones específicas del campo de arándanos, arrancar las hierbas malas de cierta sección de los campos o pedirles a los trabajadores que usaran la máquina cosechadora o la repararan.

13.     El trabajo generalmente terminaba alrededor de las 6:40 p.m. mientras trabajaba en los campos de arándanos.  Otros trabajadores y yo a veces pedíamos ir a casa temprano porque el día había comenzado más temprano y estábamos cansados.  Enrique rechazó nuestra solicitud y nos dijo que no podíamos ir a casa porque los dueños de la granja de arándanos querían que su producto fuera cosechado antes de que pudiéramos irnos.

14.     Mientras trabajaba en los campos de arándanos, el hijo de Enrique estaba en los campos y llevaba una pistola consigo alrededor de los trabajadores después de que algunos trabajadores se habían escapado.  Creí que el hijo de Enrique estaba presente para asegurarse de que los trabajadores no se escaparan mientras trabajaban en los campos de arándanos.

15.     Enrique a menudo gritaba y reprendía a los trabajadores que trabajaban en el campo de arándanos, amenazándolos con deportarlos o denunciarlos a inmigración si se quejaban de sus condiciones de trabajo.

16.     Enrique me dijo que necesitaba verificar mi pasaporte y visa.  Se llevó los documentos y nunca los devolvió.

17. Enrique se había llevado todos los pasaportes y visas de los trabajadores, incluido el mío, y nos dijo que los necesitaba para verificar y obtener nuestros números de Seguro Social.

18. Cada vez que yo o otros trabajadores migrantes nos quejábamos de las condiciones de trabajo o queríamos irnos, Enrique nos decía que no teníamos derechos en los Estados Unidos, que denunciaría a los trabajadores a las autoridades de inmigración para que los deportaran, o que denunciaría a los trabajadores al consulado y que nunca podrían regresar a Estados Unidos.

19. Los Demandados también me pagaron menos de los $11.71 por hora o la tarifa de $0.50 por libra que prometieron. En cambio, recibía de $30.00 a $40.00 al día por días completos de trabajo. Durante algunas semanas, los demandados no me pagaron ningún salario por la semana.

20. Durante el período en que trabajé para los Demandados, los Demandados nos pagaron en efectivo y no nos proporcionaron ningún registro del pago, como talones de pago. Los demandados exigían a los trabajadores, incluyéndome a mí, que limpiáramos el área de la granja y no nos pagaban por el día dedicado a la limpieza. Los Demandados también dedujeron los honorarios de transporte y alquilamiento de nuestro salario. En un momento dado, Enrique anunció que cobraría a todos los trabajadores una tarifa de $1,000 dólares por transportarlos a Estados Unidos.

21. Durante el período en que trabajé para los Demandados, Enrique me alojó a mí y a otros trabajadores de H-2A en remolques sin calefacción ni aire acondicionado, techos con goteras, sin camas y estufas y refrigeradores que no funcionaban.

22. Tenía miedo de dejar de trabajar para los Demandados debido a las amenazas de Enrique de denunciar a los trabajadores a las autoridades de inmigración y no poder regresar a

trabajar a los EE. UU. Sin embargo, un grupo de trabajadores migrantes y yo nos fuimos y dejamos de trabajar para los acusados debido a las malas condiciones de trabajo y vivienda.

De conformidad con 28 U.S.C. § 1746, declaro bajo pena de perjurio bajo las leyes de los Estados Unidos de América que lo anterior es verdadero y correcto.

Nombre: ___Cristhian Zúñiga Hernández_____

Firma: _____

Fecha: ___18 de agosto de 2024_____

Declaration of Translation

I, Fernanda Contreras, hereby declare, pursuant to 28 U.S.C. 1746, that the following facts are truthful:

1. I have personal knowledge of the facts set forth herein.

2. I fluently read, write, and speak English and Spanish.

3. The following is true and accurate translation of the attached document with the title "DECLARACIÓN."

I declare under penalty of perjury that the following is true and correct

Date: August 19, 2024

_____
Fernanda Contreras

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| CRISTHIAN ZUNIGA HERNANDEZ, LUIS ALFONSO PALMILLAS LOPEZ, and RAMON RODRIGUEZ MENDEZ,<br><br>*on behalf of themselves and all those similarly situated*,<br><br>      Plaintiffs,<br><br>v.<br><br>MARIA LETICIA PATRICIO, ENRIQUE DUQUE TOVAR, JOSE CARMEN DUQUE TOVAR, and MBR FARMS, INC., a Georgia corporation,<br><br>      Defendants. | Civil No. CV 523-023<br><br>**CLASS AND COLLECTIVE ACTION** |

## DECLARATION

I, Cristhian Zúñiga Hernández, state the following based on personal knowledge:

1. I am a Plaintiff in this case against Defendants Maria Leticia Patricio, Enrique Duque Tovar, Jose Carmen Duque Tovar, and MBR Farms, Inc. (collectively, "Defendants").

2. I worked for Defendants in 2021. I submit this declaration about that time period in support of my Opposition to Defendant MBR Farms, Inc.'s Motion to Dismiss, and in the Alternative, Motion for Summary Judgment..

3. My permanent residence is in Mexico.

4. Though I know some words in English, I do not speak or understand English. The only language I speak and understand is Spanish.

5. I am a manual laborer. I often have to travel to seek work opportunities.

6. In 2021, I traveled to the United States from Mexico on an H-2A visa to work for Defendants. There were other H-2A workers who also came from Mexico to work for Defendants when I worked there.

7. When Defendants applied to bring me to the United States as an H-2A worker, Defendants told the government I would perform farm labor related to blueberries and that I would work 35 hours a week. Defendants promised that I would earn $11.71 an hour and $0.50 per pound piece rate, but I was paid less than that amount.

8. Defendants Jose Carmen Duque Tovar ("Jose") and Enrique Duque Tovar ("Enrique") charged me fees for transportation, obtaining the visa, and recruitment fees.

9. When I first arrived in Georgia, however, Defendants did not initially direct me to work on the blueberry farms. Instead, I was told to make pine bales, gather garbage, and clean. The other H-2A workers performed similar duties. I was later transported to a blueberry field farm in Pearson, GA to cultivate blueberries. My duties alternated between pine packing and working on the blueberry farm.

10. I occasionally worked more than 40 hours per week, but I was not paid overtime.

11. While working on the blueberry farm, my duties included cultivating blueberries by hand or using a machine harvester, removing debris and trash from the blueberry fields, loading and unloading crates filled with blueberries on to trucks and pallets, and weed pulling.

12. Almost everyday I worked at the blueberry field, Enrique told us that the owners wanted us to do specific tasks, including cutting the ripe blueberries a specific way, picking specific sections of the blueberry field, pulling weeds from certain section of the fields, or asking workers to use the machine harvester or make repairs to it.

13. Work would typically end around 6:40 p.m. while I worked in the blueberry fields. I and other workers sometimes ask to go home early because the day started earlier and me and the workers were tired. Enrique refused our request and told us that we could not go home because the blueberry farm owners wanted their product harvested before we could go.

14. While working on the blueberry fields, Enrique's son would be on the fields and carry a gun around the workers after some workers had ran away. While Enrique's son was on the field armed, the owners of the blueberry farm were present. I believed Enrique's son was present to ensure that workers did not runaway while working at the blueberry fields.

15. Enrique would often yell and berate the workers working in the blueberry field, threatening to deport them or report them to immigration if they complained about their working conditions.

16. Enrique told me he needed to verify my passport and visa. He took the documents and never gave them back.

17. Enrique had taken all the workers' passports and visas, including mine, and told us that he needed them to verify and obtain social security.

18. Whenever I or other migrant workers complained about the working conditions or wanted to leave, Enrique told us that we had no rights in America, that he would report workers to immigration authorities to get them deported, or that he would report workers to the consulate and they would never be able to come back to America.

19. Defendants also paid me less than the $11.71 per hour or the $0.50 per pound piece rate they promised. Instead, I received $30.00 to $40.00 a day for full days' work. During some weeks, Defendants would not pay me any wages for the week at all.

VP/#67637039.2

20. During the period I worked for Defendants, Defendants paid cash and did not provide any records of the payment such as paystubs. Defendants would require workers, including me, to clean the farm area and would not pay for the day spent cleaning. Defendants also deducted fees for transportation and rent from our pay. At one point, Enrique announced that he would be charging all the workers a $1,000 fee for transporting them to the United States.

21. During the period I was working for Defendants, Enrique housed me and other H-2A workers in trailers with no heating or air conditioning, leaking roofs, no beds, and nonworking stoves and refrigerators.

22. I was scared to leave working for Defendants due to the Enrique's threats of reporting workers to immigration authorities and being unable to return to work the U.S. However, me and a group of migrant workers left and stopped working for defendants due to the poor working and housing conditions.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Printed Name: Cristhian Zúñiga Hernández

Signature: _____

Dated: August 18, 2024

VP/#67637039.2